Again, my name is Austin Porter Jr. I'm here on behalf of the appellate Davdrin Goffin. We bring this appeal because we believe that the trial court committed a reversible error by granting a motion for some re-judgment. We believe that Mr. Goffin raised certainly sufficient evidence to allow a reasonable fact finder to conclude that the actions of Officer Ashcraft, that her actions were unreasonable in shooting Mr. Goffin. The facts in this case indicate that Mr. Goffin was shot in the back. Mr. Goffin was being escorted out of a vehicle. There were two officers who responded to a call. Apparently, there was some type of charge indicating that Mr. Goffin had stolen two weapons from his uncle's house. Mr. Goffin indicated that he was at his uncle's house on this particular day. I believe it was September 13, 2012 when this incident happened. Mr. Goffin was sitting in a vehicle at a body shop, which was about six or seven o'clock that the call had went in to the police. When the officers arrived, it was Officer Hines and Officer Ashcraft. Officer Hines approached the vehicle on the passenger side and Officer Ashcraft approached the vehicle on the driver's side. Officer Ashcraft, both officers had their guns out, told Mr. Goffin if he moved. Officer Ashcraft said, if you move, I will shoot you. In this situation, Officer Hines took Mr. Goffin out of the vehicle. At some point, didn't Hines shift from a gun to a taser? That's correct, Your Honor. He had his gun drawn and then he holstered his gun and had his taser. Then he took Mr. Goffin out of the vehicle and brought him to the back of the vehicle and he did a pat-down search to ensure that there were no weapons found. Now, is that fact disputed? No. Well, Your Honor, Mr. Goffin indicated that he was patted down and whether or not that fact was disputed, Mr. Goffin at least, and the court has to accept that fact as being true, that Mr. Goffin was patted down for the summary judgment purposes have to take those facts that are the most light, most favorable to Mr. Goffin. So Mr. Goffin testified he was patted down and as he was in the process of being handcuffed, Officer Hines placed, and now keep in mind that Officer Ashcraft is about four feet behind Officer Hines and Mr. Goffin. She's about four feet behind at about a 45 degree angle behind to the left of these that the incident, the shooting, took place before the pat-down as a hypothetical. I agree with you that we need to assume here that the pat-down happened, but let's, as a hypothetical, say it occurred prior to the pat-down. If that was the case, would you agree that the facts leading up to that point would lead us to conclude that the officer's conduct was objectively reasonable? I mean, she had reports of him having a firearm, reports from, I think, numerous witnesses saying he was acting odd, he was going to take people out along those lines. Would you agree that if the shooting happened earlier before the pat-down that it was objectively reasonable? No, your honor, I would not agree with that because the officer, Officer Ashcraft, had her eyes trained on Mr. Goffin's hands and watching him as he was walking back to the car. She saw that he had no weapons in his hand. He wouldn't have had a weapon in his hand, but the issue would have been open perhaps that he may have had a weapon on his purse. Well, your honor, but here's the situation though. Mr. Goffin, it was just a split second that from the time when Mr. Goffin tried to run, it was just a split second from the point that he tried to run until the officer fires a shot. And the only thing that she said that she just saw that his shoulder go up and she thinks that he's about to shoot, you know, and so he had, he didn't have a weapon in his hand at the time. And so, and again, the facts have to be assumed in the light, most favorable to Mr. Goffin that he was patted down. Mr. Goffin testified he was patted down. And the only thing that Mr. Goffin had in his pocket, I believe it was a magazine clip. And certainly no officer would think that that that's a gun. It's just a magazine clip that he had in his pocket. And so it seems to me that, you know, the, the unusual issue is the pat down in the case. Are there other cases that address, um, whether conduct following a pat down is objectively reasonable? Your honor, in, in, in this situation, when you have an officer, officer Ashcraft knew that Mr. Goffin did not have a weapon in his hand. And, and also, and also that, that this individual had been patted down for weapons. And after he was patted down for weapons, then the officer began the process of incoming. But that's the issue that I'd like to hear more about. I mean, is it true that the officer knew, because it turns out this pat down wasn't very good because it revealed other items on your client's person afterwards. Is that right? Your honor, it is our position that when an officer is patting down a person, they're patting down just to make sure they don't have a weapon on them. Now, the pat down is for the purpose of discovering whether or not there's a weapon on the individual. The pat down is not to try to get any other objects out of the person's pocket. It's just to ensure that there is no weapon on that individual. And so that's the whole purpose behind a pat down. And then once the person is handcuffed, then of course, the officer will go into the pocket just to retrieve any other items that may be in that person's pocket. And so that's the whole purpose behind a pat down. It's just to make sure that the person doesn't have a weapon on them to ensure the officer's safety. And we believe in this case, your honor, that it was objectively unreasonable for the officer to shoot Mr. Goffin because the pat down occurred. I mean, she was standing behind them. She was right four feet behind them. They were at the back of the car. And so she would have had to have seen the pat down occur, because her eyes were trained on them at all times. She had a gun out. Her gun was out. And within a split second of Mr. Goffin taking off, he hadn't taken no more than one or two steps. Boom, she shoots. And here's another situation. When Mr. Goffin was shot, he asked the officer, why did you shoot me? And she said, because you ran. Now, the case of Tennessee versus Gardner, which is decided by U.S. Supreme Court in 85, said you can't use deadly force just to try to prevent someone from escaping. In this situation, Officer Ashcraft, you know, she was a little bit overweight. And she and also she had testified that she had had some recent surgery on her shoulder and that she was not in the position to be fighting with anybody. So she took the easy way out, that the easy way out was to shoot and to prevent Mr. Goffin from escaping. In the case of Tennessee, Gardner said you just can't do that. You can't use deadly force just to prevent someone from escaping. And in the 8th Circuit, in the case, I was really kind of pleasantly surprised that the 8th Circuit reached a conclusion and it did. I mean, I was happy that it did in the case of Whalott. I mean, here you have a situation where this guy was firing a weapon at the direction he had already shot at some people. And also the officer testified that Mr. Whalott had fired a gun, the weapon toward the officer's direction. And Mr. Whalott was running from the officer. He went around the corner of the house and he's running. And the officers testified that they saw Mr. Whalott turn around and that he had a gun, you know. And that's when they shot. Well, the 8th Circuit reversed the trial court granting of summary judgment in that case, saying that there was sufficient evidence to allow a reasonable fact finder to conclude that the conduct of the officers in that case was unreasonable. And if the 8th Circuit decided that, in that case, clearly, when you have a situation where the officer in the case, and when you look at these facts, Goffin had been patted down. He's being led to the back of the car. Officer Ashcraft is focused on his hand. She knows that he doesn't have a weapon in his hand. Once he gets at the back of the car, he places empty hands on the car. And then, Officer Ashcraft is four feet behind Officer Hines and Mr. Goffin. And then, as she testified, Mr. Goffin bolts. And within a split second, she shoots. And the evidence indicates that the bullet went into the left side of Mr. Goffin's spine. Apparently, it chipped some bone fragments in his bone spine and it traveled from left to right. And so, she was definitely the angle of the shot. It was not a direct shot from directly behind the back. And so, again, when you look at all of the evidence that we present in this case, a reasonable fact finder can conclude that the officer's action was clearly unreasonable. And the officer was not entitled to qualified immunity because, again, the United States Supreme Court decided the case of Tennessee versus Gardner, saying you just can't use deadly force in this situation just to adapt the judge-committed error in granting a motion for a summary judgment. We believe that the facts, when you look at the facts, we created a genuine issue of material fact. And also, the United States Supreme Court saying in Tolan versus Cotton, when you have cases like this, the court has to be careful. Let me try to find what the... It said, a court and courts must take care not to define a case context in a manner that genuinely disputed factual proposition. And again, the United States Supreme Court in Tolan said, in making that determination, the court must view the evidence in light most favorable to the opposing party. And when you look at the facts of this case, Mr. Goffin had been patted down, no weapon was seen on him, and the officer knew that he didn't have a weapon on him, as far as in his hands, he had been patted down. And based on those facts alone, Your Honor, we believe that the officer's action were objectively unreasonable. I'm going to say remaining time for... Well, the Supreme Court also tells us that qualified immunity existed in some respects to address the concern of split-second decisions in intense situations. And how does that consideration play into something which admittedly was bang-bang, literally, in terms of the defendant's conduct and the response of the officer? Well, Your Honor, in this situation, again, Mr. Goffin had been patted down, no weapons were found during the pat-down. And so at this point, the evidence has to be seen that he was unarmed. And so in light of the fact that the pat-down occurred, he was unarmed, because that's the purpose of the pat-down. So therefore, this split-second or whatever, doesn't apply in this situation, because here you have a suspect who's not armed, and so you cannot use deadly force just to prevent this person from escaping. Thank you. Thank you, Mr. Porter. Ms. Adams? Good morning, Your Honors. May it please the Court. My name is Jenna Adams, and I represent the City of Warren, Arkansas, Chief Randy Peek, Mayor Brian Martin, and Officer Robby Ashcraft in this lawsuit. I'm here today to ask that this Court affirm the District Court's ruling for the following reasons. First, Officer Ashcraft's use of deadly force in this case  was objectively reasonable given the totality of the circumstances. Specifically, it was objectively reasonable for Officer Ashcraft to believe that Goffin posed an immediate threat, a physical threat of death or serious bodily injury to herself and bystanders. Why? Well, based on all of the facts and the circumstances that she was faced with on that day, she knew that Goffin had an active arrest warrant for aggravated robbery. It had been reported to her earlier that night that he had stolen some guns from his uncle's house, Mr. Reddick. Mr. Reddick had made the comment to her, you better be ready to fight when you find him. He's out of control. Mr. Moore then reported to her that he had brandished those guns to him, showed him he had a gun in each pocket and forced him to take him to a car wash. He said he threatened him, that he smelled of alcohol. He thought he was going to rob him. He was spooked. Once the officers find him, Officer Ashcraft sees something bumping in Goffin's right front pocket. Goffin runs from the officers towards a group of seven or eight citizens. What about the pat down though? You just skipped that. Well, so we did take, the district court did take the facts in the light most favorable to the plaintiff and said that a pat down had occurred. And your honor, I believe you hit the nail on the head when you said clearly the pat down was not a very good one because things were found in his pocket later. But your counsel indicated that the pat down in a tense situation is to locate weapons. You get the suspect in handcuffs, then you can pull out contraband, personal items. I mean, what's your response to that? I mean, sure. That's what the purpose of a pat down is to feel for weapons. I think it's important to note that Hines was the one that did the pat down, not Ashcraft. Ashcraft is the one that saw something bumping in his right front pocket. And earlier in the night, it had been reported to he had a gun in each pocket. But she was standing right there during the pat down, wasn't she? Or close by? Yes. I mean, to be fair, there really is no allegation what she saw or didn't see. We know nothing was removed from the pockets, but it wasn't communicated to her, oh, he doesn't have a gun on him. I mean, it happened in a split second. It was true she saw him leave the vehicle empty handed, correct? I believe so, yes. And she saw him place empty hands on the back of the vehicle. Yes. So at that point, she knows there's no weapon in his hands. In his hands, correct. And then the officer, her partner does a pat down, which is to find the weapons. Apparently, no firearm or other immediately dangerous weapon was discovered. And his hands are still at this point, empty. One hand is taken behind his back for handcuffing. That hand does not contain a weapon. The other hand is still on the back of the car. And then the defendant bolts. She didn't, as I see the facts, I don't recall there being anything to indicate that there was an indication that the suspect moved to grab something from a pocket or pull something from some other place, but that simply they ran or he ran. And so it seems to be at least a matter of factual dispute that may make summary judgment premature for the determination of qualified immunity at this point. Why wouldn't that be the case that a reasonable fact finder could take a look at this and have a different perspective? I don't think that there is a factual dispute. All of the facts are undisputed except for the pat down. And we took that in the light most favorable to the plaintiff that the pat down did occur. I think it was objectively reasonable for officer Ashcraft to believe that he had a weapon in that front pocket when she saw something bumping in the front pocket and there had been, it had been reported that he had a gun in each pocket. And when he ran, he raised his shoulder as if reaching for a weapon. She thought I'm dead. That was her words. I thought I was dead. And so she shot him. She feared for her life. I'm sorry. Did he run towards? No, he was running away from her towards the seven to eight bystanders. The record, I don't recall the record may not reflect this. Was the car door open? Like after they got them out after they got him out at the time of the, of the shooting, it may, I don't recall it being in the record. And I, I don't recall either. Um, I would assume it probably was shut, but I, I don't call, he didn't run. If you're what you're insinuating is, was he running towards maybe that car where the guns were found? He was actually running in the opposite direction. Yeah. Thank you. Um, given the facts and the circumstances that we just discussed, the fact that he ran, he raised his shoulder as if reaching for a weapon. He's running towards bystanders. It was objectively reasonable for, for officer Ashcraft to believe that he posed a threat to her and the bystanders. Numerous courts have held in similar situations that deadly force was reasonable, giving the immediate threat to the safety of the officers and the bystanders. Probably the case most directly on point is Thompson versus Hubbard decided by this court. In that case, an officer responded to reports of shots fired and two suspects fleeing on foot from the scene of an armed robbery. Thompson turned to flee. Officer attempted to grab him, but only pulled his jacket off. A foot chase ensues. Thompson jumps the fence. As Thompson gets up from the ground, he looks over his shoulder at the officer and moved his arms as though reaching for a weapon at waist level. Thompson's back remained turned towards the officer and obscured his hands from the officer's view. Officer yelled stop. Thompson's continued to move. The officer fired one shot in the back and no weapon was found on Thompson. In that, in that case, this case, or this court held that an officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a weapon. I mean, that's what we have here. We have somebody who, you know, it was, it was reasonable for her to believe that there still was a gun in that, in that pocket. She feared for her life when he raised his shoulder as if reaching for a weapon, which is what Thompson did. Well, isn't that something that a reasonable fact finder should address? I mean, in essence, was it reasonable to assume that there was a firearm about to be deployed against the officer or someone else present? Respectfully, I believe that's a question of law, whether or not it was objectively reasonable for the officer, an officer in her position, given these facts and these circumstances, whether it was objectively reasonable for that officer to believe that he was armed and posed a threat. Well, that's assuming all of the facts in the manner in which you've described them. And the facts are all undisputed. And so I believe given the undisputed facts, the question of law is, was it objectively reasonable for her to believe that he posed a threat? And I believe the answer is yes, based on case law out of this circuit. And another case that's similar, Billingsley versus the city of Omaha. A man broke into his neighbor's house. An officer confronts the suspect. He sees a person in his left hand, but he can't see his right hand. The suspect runs. Officer falls in with a gun. He warns him to stop. The suspect jumps the fence, lands in a crouched position. He rotates his shoulder. The officer shoots in the back and the suspect's unarmed. This court held that the inability of the officer to see the suspect's hand and the shoulder movement gave the officer probable cause to believe the suspect posed an immediate threat of deadly force and was objectively reasonable. I mean, in that case, there wasn't even any reports that this guy... Which case was that? Billingsley versus the city of Omaha. But there was no pat-down in that case, right? Correct. That kind of segues me into my next argument. There's no case that is directly on debate that a reasonable officer would know that her actions in this case would violate clearly established law. Thus, Officer Ashcroft is entitled to qualified immunity. I think it's really important to point out qualified immunity and some language from Mullinex versus Luna, the Supreme Court case, that says specificity is especially important in the Fourth Amendment context because it's difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that the officer confronts. Use of excessive force is an area of law in which the result depends very much on the facts of each case and thus the police officer entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. We don't have any cases from the Supreme... that is factually similar enough to place this question beyond debate. He cites the Tennessee versus Garner to argue that Officer Ashcroft is not entitled to qualified immunity. However, it's not factually similar and it would not put a reasonable officer in Ashcroft's position on notice that the use of deadly force in this circumstance would violate the Constitution. The officer in that case was reasonably sure that Garner was unarmed. I think, as we've been talking about, I think it was objectively reasonable for Officer Ashcroft to believe that he was still armed in this case. She wasn't reasonably sure that he was not armed. That turns on how much reliance could be put on the conduct of a pat-down search. Well, I think it was still objectively reasonable for an officer in her position. She didn't conduct the pat-down. She saw something bumping in that pocket. She knew he had guns in each pocket earlier that night. I think it was reasonable for her to believe that he was armed despite the pat-down. We know that the pat-down obviously wasn't that great because things were found in his pocket, including the clip, and I think a reasonable officer probably could think a clip was a weapon and might remove it. One other thing I wanted to discuss, the crimes at issue. Tennessee v. Garner has three different factors when it comes to whether or not use of force is objectively reasonable. Severity of the crime at issue, whether the suspect poses immediate threat to the safety of officers and others, and whether the suspect is actively resisting or attempting to evade arrest by flight. All of these elements are present in this case. The crimes at issue that day were numerous. Some were inherently violent. He had an outstanding warrant for aggravated robbery. He'd stolen two brandished those guns to Mr. Moore, and he demanded to be taken to a car wash. The crime at issue is not merely Goffin's crime at the time, such as fleeing. Rather, it encompasses all of the crimes that he committed that night, and that's actually Hosea v. City of St. Paul decided by this court. If your honors don't have any other questions, I believe that is all I have. Thank you so much. Thank you, Ms. Adams. Mr. Porter, your rebuttal. Your honor, the crime at issue that was involved on this particular day was residential burglary. Mr. Goffin was accused of breaking into his uncle's home. He was charged with residential burglary, being a felon in possession of a firearm. He was also charged with theft. Of course, he went to trial and he was found not guilty on those charges, but I know that's not really relevant for the purpose of this. He was found guilty of being a felon in possession of a firearm. That was the only charge that he was found guilty of. The appellee cites the case of Thompson v. Hubbard. That case is distinguishable from the facts in this case because shots had been fired in Thompson v. Hubbard. The officer testified that after he warned the person to stop, the person was reaching for his waist as if he was reaching for a gun. That wasn't the officer. Ashcraft never testified that Mr. Goffin was reaching for a weapon, was turning around, or making some kind of threat toward her or anything. Her sole reasoning for shooting Mr. Goffin was the fact that she said she saw his shoulder go up and she thought that he was about to shoot. I asked her during the deposition, I said, well, you would agree with me that when people are in the act of running, their shoulder would go up. She said, well, yeah, I mean, that happens. And so, again, we believe, Your Honor, that the pat-down search in this case, and all officers are trained, you do a pat-down for the purpose of trying to determine whether or not any type of weapon is on that person's body. And the pat-down occurred, that's a fact that has to be accepted by the court. Now, I think that... Did the district court accept the occurrence of the pat-down? Well, Your Honor, I think she kind of did some kind of credibility determination because she said, well, obviously the pat-down wasn't good enough because he was found on a magazine clip. And I think the district judge questioned whether or not the pat-down had occurred. And that's making a credibility finding because Mr. Goffin said he was patted down. And also, I asked Officer Ashcraft, well, when you saw Mr. Goffin walking to the back of the car being escorted by Officer Hines, I mean, I asked the officer, you would agree with me that Officer Hines, if Officer Hines had seen a weapon in Mr. Goffin's hand, he would have immediately taken it, right? She said, well, yeah. And I also asked the officer, well, when you saw something bumping in his pocket, did you tell the officer at that point time to stop, get something, he got something in his pocket? She said she never did that. You know, the officer Hines led Mr. Goffin to the back, his hands were placed on the car, his hands were empty, a pat-down occurred, weapon hit, that's when he began the handcuffing process. And Mr. Goffin just takes off to the left and she immediately shoots, no warning, no nothing. And then they gave us additional reason, oh, he was running toward a crowd. She never stated that. Mr. Goffin asked, why did you shoot me? She said, because you ran and you can't do that. Thank you. Thank you, Mr. Porter. Thank you also, Ms. Adams. We appreciate the argument you provided to the court this morning. It's helpful in resolving the matters that are before us. And thank you also for the briefing and we'll take the case on divorce. You may be excused.